Sheehan & Associates, P.C.
Spencer Sheehan
spencer@spencersheehan.com
(516) 303-0552

United States District Court
Eastern District of New York                                1:19-cv-01265

| | |
|---|---|
| Boubacar Sarr individually and on behalf of all others similarly situated | |
| Plaintiff | |
| - against - | Complaint |
| The A2 Milk Company | |
| Defendant | |

Plaintiff by attorneys alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1. The A2 Milk Company ("defendant") produces, bottles, packages, markets, distributes and sells milk identified as "a2 Milk" ("Products").

2. The Products are sold in whole, 1%, 2%[1] and chocolate in various sized cartons, available to consumers nationwide at grocery stores and other retailers.

3. The front labels contain the brand name "a2," "Feel the Difference," "Easier on Digestion" and "Naturally Easy to Digest."

---

[1] Percent milk fat.

1

 

4. The other three sides elaborate on the front-label claims, describing "The a2 Milk Difference" by posing the rhetorical question below:



Discomfort from milk?

Ordinary cows' milk contains a mix of A1 and A2 protein types. The a2 Milk brand comes from cows that naturally produce only the A2 protein and no A1 – and that makes a big difference. Independent research shows the A1 protein can cause you tummy discomfort. If that's you, a2 Milk may help.

5. Cow's milk is made up of two milk proteins—whey and casein.

6. Of the 12 different types of casein proteins, the most common are called A1 and A2.

7. "Ordinary Milk" contains a combination of A1 and A2 while a2 Milk exclusively contains A2.

8. According to the research supporting the representations, the difference in casein proteins is manifested in the way A1 protein is broken down, creating a peptide (protein fragment) called beta-casomorphin-7 (BCM-7), believed to cause digestive issues commonly associated with dairy products.

9. In contrast, the breakdown of A2 does not result in BCM-7.

3

10. According to the representations, a2 Milk's relative ease of digestion owes to its origins as the "original" cow's milk.



Originally, cows' milk contained only one beta casein protein, called A2.

Over time, cows started to naturally produce a different beta casein protein, called A1.

More and more research suggests this may be the reason some people say milk just doesn't agree with them.

11. It is deceptive and misleading to tout the relative superiority of the Products, based on the absence of BCM-7, when there are no criteria for establishing potentially negative values of this substance.

12. The Products' representations of their A2 content are misleading as to their nutrient content because there are no negative effects of A1 protein in "ordinary milk."

13. The representations that the Products contain *more* A2 than ordinary milk are misleading because no quantification is provided with respect to the actual amount of A2 contained in standard milk products.

14. To the extent that the images of the A1/A2 and A2 cows indicate the quantity of A2

4

contained in ordinary milk, this information is imprecise because a consumer has no way of knowing how much A2 is contained in the A1/A2 "ordinary milk."

15. The representations convey that the A2 proteins are superior in their ability to prevent and/or limit digestive discomfort through reliance on "independent research."

16. In fact, the research relied upon has been shown to be performed by groups, organizations and researchers with close ties to defendant.

17. The representations that the Products are "easier to digest" is misleading because it is misleading comparison (suffix "-ier") to the digestibility of traditional milk.

18. However, A2 milk and ordinary traditional milk both contain lactose, which is the component of milk which provides digestive difficulty to affected persons, and the lactose content is not impacted by whether the proteins are A1 or A2.

19. All reasonable scientists agree there are no detrimental effects of A1 protein from traditional milk on human digestion and that A2 protein does not provide "easier" digestion, quantified by gastrointestinal transit time in clinical studies of relevant population groups.

20. The studies purporting to support the Products' claims that A2 proteins provide nutritional, health and functional advantages vis-à-vis A1 proteins are poorly designed, implausible, contrary to human physiology and represent the view of a minority of scientists.

21. The Products contain other representations which are misleading and deceptive.

22. Excluding tax, the Products cost no less than $4.99 per gallon and according to a 2017 news report, c. $9 per gallon, a premium price compared to other similar products.

## Jurisdiction and Venue

23. Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2).

24. Upon information and belief, the aggregate amount in controversy is more than

$5,000,000.00, exclusive of interests and costs.

25. This court has personal jurisdiction over defendant because it conducts and transacts business, contracts to supply and supplies goods within New York.

26. Venue is proper because plaintiff and many class members reside in this District and defendant does business in this District and State.

27. A substantial part of events and omissions giving rise to the claims occurred in this District.

## Parties

28. Plaintiff is a citizen of Kings County, New York.

29. John and Jane Doe plaintiffs are citizens of the other 49 states.

30. Defendant is a Delaware corporation with a principal place of business in Boulder, Colorado (Boulder County).

31. During the class period, plaintiffs purchased one or more Products for personal consumption, for no less than $4.99 per product, excluding tax, within this district and/or state.

32. Plaintiffs paid this premium because prior to purchase, plaintiffs saw and relied on the misleading representations.

33. Plaintiff would purchase the Products again if there were assurances that the Products' representations were no longer misleading.

## Class Allegations

34. The classes consist of all consumers in the following states: all, New York who purchased any Products with actionable representations during the statutes of limitation.

35. A class action is superior to other methods for fair and efficient adjudication.

36. The class is so numerous that joinder of all members, even if permitted, is

impracticable, as there are likely hundreds of thousands of members.

37. Common questions of law or fact predominate and include whether the representations were likely to deceive reasonable consumers and if plaintiff(s) and class members are entitled to damages.

38. Plaintiff(s) claims and the basis for relief are typical to other members because all were subjected to the same representations.

39. Plaintiff(s) is/are an adequate representative because his/her/their interests do not conflict with other members.

40. No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

41. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest.

42. Plaintiff(s) counsel is competent and experienced in complex class action litigation and intends to adequately and fairly protect class members' interests.

43. Plaintiff(s) seeks class-wide injunctive relief because the practices continue.

New York General Business Law ("GBL") §§ 349 & 350
and Consumer Protection Statutes of Other States and Territories

44. Plaintiff and John and Jane Doe plaintiffs, representing the forty-nine (49) other states where they reside and purchased the Products, incorporate by reference all preceding paragraphs and assert causes of action under the consumer protection statutes of all fifty (50) states.

a. Alabama Deceptive Trade Practices Act, Ala. Code § 8-19-1, *et. seq.*;

b. Alaska Unfair Trade Practices and Consumer Protection Act, Ak. Code § 45.50.471, *et. seq.*;

c. Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, *et. seq.*;

d. California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.* and Unfair Competition Law, Cal. Bus. Prof. Code §§ 17200- 17210 *et. seq.*;

e. Colorado Consumer Protection Act, Colo Rev. Stat § 6-1-101, *et. seq.*;

f. Connecticut Unfair Trade Practices Act, Conn. Gen Stat § 42-110a, *et. seq.*;

g. Delaware Deceptive Trade Practices Act, 6 Del. Code § 2511, *et. seq.*;

h. District of Columbia Consumer Protection Procedures Act, D.C. Code §§ 28-3901, *et. seq.*;

i. Florida Deceptive and Unfair Trade Practices, Act *Florida Statutes* § 501.201, *et. seq.*;

j. Georgia Fair Business Practices Act, §10-1-390 *et. seq.*;

k. Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statutes § 480 1, *et. seq.* and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised Statute § 481A-1, *et. seq.*;

l. Idaho Consumer Protection Act, Idaho Code § 48-601, *et. seq.*;

m. Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1, *et. seq.*;

n. Kansas Consumer Protection Act, Kan. Stat. Ann §§ 50 626, *et. seq.*;

o. Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. §§ 367.110, *et. seq.*, and the Kentucky Unfair Trade Practices Act, Ky. Rev. Stat. Ann § 365.020, *et. seq.*;

p. Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. §§ 51:1401, *et. seq.*;

q. Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, *et. seq.*, and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, § 1211, *et. seq.*;

r. Massachusetts Unfair and Deceptive Practices Act, Mass. Gen Laws ch. 93A;

s. Michigan Consumer Protection Act, §§ 445.901, *et. seq.*;

t. Minnesota Prevention of Consumer Fraud Act, Minn. Stat §§ 325F.68, *et. seq.*; and Minnesota Uniform Deceptive Trade Practices Act, Minn Stat. § 325D.43, *et. seq.*;

u.  Mississippi Consumer Protection Act, Miss. Code An. §§ 75-24-1, *et. seq.*;

v.  Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et. seq.*;

w.  Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code § 30-14-101, *et. seq.*;

x.  Nebraska Consumer Protection Act, neb. Rev. Stat. § 59 1601 *et. seq.*, and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301, *et. seq.*;

y.  Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. §§ 598.0903, *et. seq.*;

z.  New Hampshire Consumer Protection Act, N.H. Rev. Stat. § 358-A:1, *et. seq.*;

aa. New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8 1, *et. seq.*;

bb. New Mexico Unfair Practices Act, N.M. Sta. Ann. §§ 57 12 1, *et. seq.*;

cc. North Dakota Consumer Fraud Act, N.D. Cent. Code §§ 51 15 01, *et. seq.*;

dd. Ohio Rev. Code Ann. §§ 1345.02 and 1345.03; Ohio Admin. Code §§ 109;

ee. Oklahoma Consumer Protection Act, Okla. Stat. 15 § 751, *et. seq.*;

ff. Oregon Unfair Trade Practices Act, Ore. Rev. Stat. § 646.608(e) & (g);

gg. Rhode Island Unfair Trade Practices and Consumer Protection Act, R.I. Gen. Laws § 6-13.1-1 *et. seq.*;

hh. South Carolina Unfair Trade Practices Act, S.C. Code Law § 39-5-10, *et. seq.*;

ii. South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws §§ 37 24 1, *et. seq.*;

jj. Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101 *et. seq.*;

kk. Vermont Consumer Fraud Act, Vt. Stat. Ann. Tit. 9, § 2451, *et. seq.*;

ll. Washington Consumer Fraud Act, Wash. Rev. Code § 19.86/0101, *et. seq.*;

mm. West Virginia Consumer Credit and Protection Act, West Virginia Code § 46A-6-101,

*et. seq.*;

nn. Wisconsin Deceptive Trade Practices Act, Wis. Stat. §§ 100.18, *et. seq.*

45. Defendant's representations and omissions are false, unfair, deceptive and misleading and are not unique to the parties and have a broader impact on the public.

46. Defendant's acts, practices, advertising, labeling, packaging, representations and omissions are not unique to the parties and have a broader impact on the public.

47. Plaintiff desired to purchase products which were as described by defendant and expected by reasonable consumers, given the product type.

48. The representations and omissions were relied on by plaintiff and class members, who paid more than they would have, causing damages.

## Negligent Misrepresentation

49. Plaintiff incorporates by references all preceding paragraphs.

50. Defendant misrepresented the nutritional and functional significance of the Products' composition.

51. Defendant had a duty to disclose and/or provide non-deceptive labeling of the Products and knew or should have known same were false or misleading.

52. This duty is based on defendant's purported position as a self-designated learned intermediary and an entity which has held itself out as having special knowledge in the production and sale of the product type.

53. Defendant negligently misrepresented and/or negligently omitted material facts.

54. Plaintiff reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Products.

55. Plaintiff and class members would not have purchased the Products or paid as much

if the true facts had been known, thereby suffering damages.

### Breach of Express Warranty and Implied Warranty of Merchantability

56. Plaintiff incorporates by references all preceding paragraphs.

57. Defendant manufactures, packages, distributes and sells Products which purport to be described enhanced milks with superior nutritional and functional attributes.

58. This warrants to consumers that the Products will be more easily digested than the non-enhanced, A1/A2 "ordinary" milk.

59. The Products warranted to plaintiff and class members that they possessed functional, nutritional, organoleptic, sensory, physical and other attributes which they did not.

60. Defendant warranted such attributes to plaintiff and class members, when this was not truthful and was misleading.

61. The Products did not conform to their affirmations of fact and promises, wholly due to defendant's actions.

62. The Products were not merchantable in their final sale form.

63. Plaintiff and class members relied on defendant's claims, paying more than they would have.

### Fraud

64. Plaintiff incorporates by references all preceding paragraphs.

65. Defendant's purpose was to mislead consumers who seek dairy products which have qualities aforedescribed in furtherance of optimal nutritional, functional and health outcomes.

66. Defendant's intent was to secure economic advantage in the marketplace against competitors.

67. Plaintiff and class members observed and relied on defendant's claims, causing them to pay more than they would have, entitling them to damages.

## Unjust Enrichment

68. Plaintiff incorporates by references all preceding paragraphs.

69. Defendant obtained benefits and monies because the Products were not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

## Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE,** plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff(s) as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant to correct such practices to comply with the law;

3. Awarding monetary damages and interest, including treble and punitive damages, pursuant to the common law, GBL and other statutory claims;

4. Awarding costs and expenses, including reasonable fees for plaintiffs' attorneys and experts; and

5. Such other and further relief as the Court deems just and proper.

Dated:   March 5, 2019

          Respectfully submitted,

          Sheehan & Associates, P.C.
          /s/Spencer Sheehan
          Spencer Sheehan (SS-8533)
          505 Northern Blvd., Suite 311
          Great Neck, NY 11021

(516) 303-0552
spencer@spencersheehan.com


Joshua Levin-Epstein
1 Penn Plaza, Suite 2527
New York, NY 10119

13

1:19-cv-01265
United States District Court
Eastern District of New York

Boubacar Sarr individually and on behalf of all others similarly situated

Plaintiff

- against -

The A2 Milk Company

Defendant

Complaint

Sheehan & Associates, P.C.<br>
505 Northern Blvd., #311<br>
Great Neck, NY 11021<br>
Tel: (516) 303-0052<br>
Fax: (516) 234-7800

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated:  March 5, 2019

/s/ Spencer Sheehan<br>
Spencer Sheehan